UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

LOUIS WHALEY, LILLIE C. WHALEY, and MARK WHALEY,

    Plaintiffs,

v.

CITY OF BURGIN, acting through the BURGIN WATER DEPARTMENT, and GEORGE HENSLEY,

    Defendants.

CIVIL ACTION NO. 5:16-25-KKC

**MEMORANDUM OPINION & ORDER**

\*\*\* \*\*\* \*\*\*

Defendant City of Burgin, acting through the Burgin Water Department, and defendant George Hensley filed a motion for summary judgment (DE 27). Having been fully briefed, the matter is now ripe for review. For the reasons state herein, the Court will GRANT IN PART the defendants' motion as it relates to plaintiffs' federal due process claims and remand the remaining state-law claims back to the Mercer Circuit Court.

I.

A small town in Mercer County, Kentucky, the City of Burgin owns and operates its own water distribution system. This case, originally filed in Mercer Circuit Court, involves a water-service dispute between plaintiffs Louis, Lillie, and Mark Whaley and the City. Louis and Lillie Whaley, a married couple, purchased real property located at 440 Burgin-Danville Road in May 2000. Their son, Mark, operates an online business, A2Z Books, on the property and leases the building from his parents.

Back in the summer of 2007, the City hoped to develop a new residential subdivision. Like all subdivisions, this one needed a water supply. At the time, the City's water lines in

1

that area were too small to properly supply what the City hoped to be a burgeoning development. As part of the construction plan, the City needed to upgrade a 2-inch water line to a 6-inch line to accommodate the increased need for water in the residential subdivision. A portion of that water line crossed through the Whaleys' property. George Hensley, then the water operator for the City, approached the Whaleys requesting permission for an easement to replace the portion of the old pipe located on the Whaleys' property to allow the City to connect the larger line to the new housing development. The Whaleys refused to allow the construction project on their property. Undeterred, the City obtained an encroachment permit from the Kentucky Transportation Cabinet, receiving permission to lay the water line in the state right of way. In January 2008, the City completed the project. As it turns out, the City did not perform the work in accordance with the specifications of the permit. It dug the trench for the water line in the wrong place on the Whaleys' property (DE 28, Ex. 5).

The construction mistake notwithstanding, the City also hoped that the residential area would help alleviate what it perceived to be a chlorine dissipation issue in the area. Chorine dissipation occurs when water sits stagnant inside a water distribution system for an extended period of time, and it requires a water operator to flush the system. With the new residential subdivision, the City thought, there would be less stagnant water and less chlorine dissipation. The concern over the stagnant water eventually led the City to consider removing the water meter feeding the Whaleys' property. Removing the water meter meant that the water supply to the property would be shut off for a period of time to allow the City to fix the potential chlorine issue. The Whaleys contend the City's concern about chlorine was pretext, mere retribution for the trouble the family caused during the water-line project.

The issue was discussed at the October 2009 and May 2010 City Council meeting. Following the second meeting, the City Council determined pulling the water meter from the Whaleys' property and disconnecting the water supply was the best course of action to

2

alleviate the chlorine dissipation and other issues related to the water supply. The City sent Louis Whaley a letter on May 11, 2010, which explained the City's decision to pull the water meter and informed him that he could expect the City to act on May 20, 2010. Louis Whaley sent the City back his own letter citing his concerns on May 18, 2010. There is no evidence the City pulled the water meter in May 2010. Instead, the City continued to debate how to best handle the issue throughout that summer.

On June 1, 2010, the City Council met again and discussed a recent inspection by the State Fire Marshall's Office of the Whaleys' property. The Fire Marshall determined that the sprinkler system on the property was noncompliant. The City opted to allow the Whaleys time to fix the issues with the property. Weeks later on June 22, 2010, the City Council met again to discuss the issue.

In a letter dated September 9, 2010, the City informed the Whaleys that it voted two days earlier and, after seeking "additional input from the State Fire Marshall and Mercer County Building Code Administrator," and after it had determined that the "sewage treatment plant and sprinkler systems [were] not up to code," "the legislative body of Burgin [had] decided to remove [the] water meter" (DE 27, Ex. 15). The decision was unanimous. The letter further stated that the water meter was to be removed on September 13, 2010. *Id*. There is no official record documenting when the water meter was actually removed, but the Whaleys confirmed that the meter was removed by the City in September 2010, specifically on September 16, 2010. *See* Louis Whaley Dep. 66: 17–19, 111: 9–15 (DE 29-1); Mark Whaley Dep. 76:11–14 (DE 29-2). Also, records showed that the Whaleys were not issued water bills in October 2010 (DE 29-3). The Whaleys contend that the City's debate over their property and subsequent decision to turn the water off were less concerned with the water supply and more concerned with harming the family's interest in the property.

Based on this belief, the Whaleys brought suit in Mercer Circuit Court on October 21, 2011, more than a year after the City shut off the water to the property, alleging state law claims of inverse condemnation and negligence (DE 1-2). After amending again the complaint in 2012 (DE 1-6) to assert that the inverse condemnation occurred in 2008 not 2010, the Whaleys amended their complaint one more time on January 15, 2014 (DE 1-13). Therein, the Whaleys alleged for the first time a violation of due process. The complaint, now-twice amended, included five other claims: trespass and unlawful taking; negligence; tortious interference with contractual and business relations; defamation and slander; and a violation of the Kentucky Consumer Protection Act, KRS 367.110. The 2014 version of the complaint also added Mark Whaley as a plaintiff and George Hensley as a defendant.

II.

All of this—after seven years—is now in front of the Court on the defendants' motion for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists when the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986). When the defendant is the moving party, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. The moving party has the initial burden of identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, "the nonmoving party must go beyond the pleadings and come forward with specific facts to show there is a genuine issue for trial." *Chao*, 285

4

F.3d at 424 (citing *Celotex*, 477 U.S. at 324). The nonmoving party, however, "must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Chao*, 285 F.3d at 424 (internal citations omitted).

III.

Federal claims come first. The Whaleys argue that their constitutional right to due process of law was violated when the defendants removed the water meter from their property. This due process claim—Count III, titled "Violation of Due Process"—was added for the first time in the third amended complaint, filed on January 15, 2014, and states in its entirety as follows:

### COUNT III- VIOLATION OF DUE PROCESS

37. Paragraphs 1-36 are incorporated by reference as if fully set out herein.

38. Before terminating or limiting the supply of water to a person or business, the City of Burgin is required to provide that person or business with due process. Further, the City of Burgin cannot arbitrarily deny or provide inadequate water supply to a person or business or limit its water supply.

39. The Plaintiffs were arbitrarily denied and continue to be denied an adequate water supply by the City of Burgin, including its employees, agents, and representatives, and were not afforded due process prior to the termination of their water supply.

40. As a result of Defendants' unlawful and arbitrary termination of Plaintiff's water supply, Plaintiffs have been damaged in an amount that exceeds the minimum jurisdictional limits of this Court.

41. The termination of the water service and refusal to supply an adequate water supply to the Plaintiffs was without cause and unjustified, as such loss of water supply has created a dangerous situation and health and safety hazard for the occupants of the improvements located on the property.

> 42. The actions of the City of Burgin, through its employees, agents, and representatives, were willful, wanton, malicious, and reckless, and justify and award of punitive damages to the Plaintiffs.

(DE 1-13, at 7–8). Before turning to the merits of the claim, the Court must address the defendants' contention that the Whaleys' federal claim is time-barred.

The Whaleys' due process claims are brought pursuant to 42 U.S.C. § 1983, which, of course, creates a cause of action against any person who, acting under the color state law, abridges rights created by the Constitution or the laws of the United States—that is, federal law. *See* 42 U.S.C. § 1983; *see Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997). "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidon v. State of Tenn. Dept. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The applicable statute of limitations for a § 1983 action arising in Kentucky is one year. *Bonner v. Perry*, 564 F.3d 424, 431 (6th Cir. 2009); KRS § 413.140(1)(a). There is no dispute about the applicable statute of limitations. The parties disagree only as to when the one-year statute of limitations began to run.

To determine when the claim is said to "accrue," the Court must look to federal law. *Eidson*, 510 F.3d at 635 (stating that the "date on which the statute of limitations begins to run in a § 1983 action is a question of federal law") (internal citations omitted). "The statute of limitations begins to run when a plaintiff knows or has reason to know of the injury which is the basis of his action." *American Premier Underwriters, Inc. v. Nat'l Railroad Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016) (internal citations and quotations omitted). "A plaintiff has reason to know of his injury when he should have discovered it through the

exercise of reasonable diligence." *Id*. Courts determine the accrual date of a claim by asking "what event should have alerted the typical lay person to protect his or her rights." *Id*.

That determination is, at first blush, complicated here because the Whaleys' complaint is unclear as to which due process theory—procedural or substantive—they intend to assert. While the same case or controversy can certainly give rise to more than one constitutional claim, it does not necessarily follow that all constitutional claims share the exact same factual predicate. *See, e.g.*, *Kuhnle Bros., Inc. v. Cnty. of Geauga,* 103 F.3d 516, 520–22 (6th Cir. 1997) (separately addressing the accrual dates for plaintiff's takings claim, substantive due process claim for deprivation of property, and substantive due process claim for deprivation of liberty under § 1983). The Whaleys' response to the defendants' motion to dismiss suggests an attempt to assert both procedural and substantive due process claims, (DE 28, at 18–19), so it is possible that different accrual dates could apply.[1] That is why "[the Court] must first identify what injuries formed the basis of [a plaintiff's] constitutional claims." *Printup v. Director, Ohio Dep't of Job & Family Servs.*, 654 F. App'x 781, 785 (6th Cir. 2016).

In this case, such an exercise is unneeded and concern over determining the date of accrual for each claim is short-lived. Regardless of which due process theory the Court considers and how each claim may spring forth different potential accrual dates, the record makes clear that any deprivation of due proves that the Whaleys suffered was fully effectuated, at the latest, when the City actually removed the water supply to the property on September 16, 2010. The Whaleys argue that "[c]onflicting reports exist regarding when

---

[1] When asserting a procedural due process claim, "a plaintiff's injury accrues at the time that process was denied because 'the allegedly infirm process is an injury in itself.'" *See* A*merican Premier Underwriters*, 839 F.3d at 461 (quoting *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991)). This means that a person may have reason to know of a procedural due process injury even before a "final decision" on the underlying substantive issue, as the process itself could be denied beforehand. *See id*.

the water meter was actually removed" and that the water "may" have been shut off in September 2010 (DE 28, at 6). The Court finds no conflict in the record. While the record demonstrates that the water meter was not removed on September 13, 2010, which was the intended date of removal according to the City's September 9, 2010 letter, it is clear based on the Whaleys' own testimony that the water meter was removed three days later on September 16, 2010. *See* Louis Whaley Dep. 66: 17–19, 111: 9–15 (DE 29-1); Mark Whaley Dep. 76:11–14 (DE 29-2). Setting the accrual date at September 16, 2010, then, affords the Whaleys every benefit of the doubt when trying to "identify what injuries formed the basis" of their substantive and procedural due process claim based on the deprivation of their purported property interest in the water supply. *Printup*, 654 F. App'x at 785.

A straightforward application of the one-year statute of limitations to the established accrual date renders the Whaleys' constitutional claims, no matter the type, time-barred. The Whaleys filed their original complaint on October 24, 2011, more than a year after the September 16, 2010 accrual date. The Whaleys did not assert their due process claims until the filing of third amended complaint, which occurred on January 15, 2014. Thus, it is evident that the Whaleys' due process claims are untimely and must be dismissed.

The Whaleys attempt to resist this conclusion with the sole argument that their due process claims "relate back" to the original cause of action under Federal Rule of Civil Procedure 15(c). But this argument is meritless.

As explained above, the January 15, 2014 amendment added these due process claims to the Whaleys' suit for the first time. It also added a new plaintiff, Mark Whaley, and a new defendant, George Hensley. "[T]he precedent of this circuit clearly holds that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (internal quotations and citations omitted). Rule 15(c)(1)(B) allows

relation back of an amendment asserting a "claim or defense," but it does not authorize the relation back of an amendment adding a new party. *Id*. Similarly, Rule 15(c)(1)(C), which permits relation back of an amendment changing a party or its name, applies by its plain language to changes to defendants. *Id*.; *See* Fed. R. Civ. P. 15(c)(1)(C). Thus, because Mark Whaley was added to the complaint that included the due process claim for the first time, this claim cannot relate back, keeping the actual filing date of the due process claim on January 15, 2014—more than three years after the accrual date and more than two years past the statute of limitations. Holding otherwise would allow the "adding [of] new parties and new claims" to "circumvent the statute of limitations." *Id*. at 319.

Additionally, even if the Court were to ignore *Asher* and assume that the due process claims did relate back to the originally filed complaint, they are still time barred. There is no doubt that the due process causes of action "arise[] from the same conduct, transaction, or occurrence" of that put forth in the original complaint. Fed. R. Civ. P. 15(c)(1)(B). However, relating back does not revive the claims because the accrual date decides the issue. The original complaint, filed October 24, 2011, was filed after the statute of limitations had run because the last possible date of accrual for either due process claim was the date the water meter was removed—September 16, 2010.

For these reasons, the Court concludes that the Whaleys' causes of action accrued when the water meter was removed from their property on September 16, 2010. Even assuming that the addition of Mark to the suit in the third amended complaint did not prevent the amended complaint from relating back, the due process claims fall outside the one-year statute of limitations period. Accordingly, the Whaleys' § 1983 claim for deprivation of substantive and procedural due process must be dismissed as time-barred. The Court need not address the merits of the Whaleys' substantive claims.

IV.

All the federal causes of action are now gone. All that remains are the Whaleys' state-law claims, and the Kentucky courts are better positioned to address these issues. *See Widgren v. Maple Grove Twp.*, 429 F.3d 575, 586 (6th Cir. 2005) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismiss the state law claims . . . ."). Accordingly, it is **ORDERED** that:

1. The defendants' motion for summary judgment, DE 27, is **GRANTED IN PART**;
2. Count III of the plaintiffs' third amended complaint, DE 1-13, is **DISMISSED with prejudice**;
3. The remainder of the plaintiffs' claims are **REMANDED** to Mercer County Circuit Court;
4. Defendants' Motion to Strike, DE 30, and motion in limine, DE 36, are **DENIED** as **MOOT**.
5. The pre-trial conference and trial date for this matter are **SET ASIDE**; and
6. This matter is **STRICKEN** from the Court's active docket.

A separate judgment shall issue.

Dated June 12, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY